Mr. Cordes? Good morning, Your Honors. Please support my name is Samuel Cordes. I represent Mr. Patrick Connelly in this case. I'd like to reserve three minutes if I can. Great. Thank you. Your Honor, this is a case under the Privileges and Immunities Clause of the 14th Amendment. Mr. Connelly, who was a teacher in Maryland for about nine years, migrated to Pennsylvania, applied and was offered a job at Steel Valley School District, but was paid less than a teacher who had all of his or her experience in Pennsylvania schools. The question here is whether Steel Valley's classification of Maryland teaching experience differently than Pennsylvania teaching experience and the resulting lower salary is a penalty imposed on him for exercising his right to migrate. Your Honor, in the Sanez case, the Supreme Court kind of clarified the right to travel jurisprudence, and this is kind of a component of that. The court in Sanez said that a state implicates the right to travel if it uses a classification that serves to penalize the exercise of a right to travel, and that right to travel embraces a citizen's right to equal treatment in his or her new forum. The issue is basically, and what the Supreme Court has subsequently said, is that when you place some burden on citizens of other states that you don't place on citizens of your own state,  The district court in this case dismissed on a Rule 12b-6 basically arguing that because the classification neither conditions receive a full credit on the residency nor classifies teachers specifically on the basis of residency, it doesn't implicate a right to travel. The Supreme Court subsequently, to Sanez, has held basically the opposite. In the Hillside Dairy case, Your Honors, which was decided in 2003 after Sanez, it's 539 U.S. 59, the court held that absence of a direct statement is not enough to reject the privileges and immunities clause. In the Hillside Dairy case, the court looked at sort of two functions, whether the classification is a proxy or whether the practical effect of the classification is discriminatory. And the very same district court, although a different judge of the district court in this case, faced in the Ayersman case with the exact facts, or very similar facts, said that the practical effect of a district policy that discounts out-of-state experience imposes a substantial burden on your state migration. And that's basically the issue in this case, Your Honor. The district court said that absent a direct intentional discrimination on the basis of state, that is something that actually facially conditions it, we're not going to go forward. The court then rejected, based on a district court decision from Connecticut, I believe, the Karen case, that a right to travel claim is the court, the district court said the right to travel claim is not implicated merely because the burden of a state policy falls disproportionately on recent migrants. Your Honor, again, the Supreme Court has held otherwise. The Hillside case says let's look at the practical effect of the classification. And on a 12B6 record, Your Honor, that is what I should have the opportunity to do. The practical effect of discounting Maryland teaching experience has an effect on interstate migration. That person may not move to Pennsylvania because his or her teaching experience is going to be not credited. And that has a very substantial effect. In this case, it amounted to an $11,000 difference in salary. And as time progresses, Pennsylvania teachers are paid based on years of experience and education. And at a certain step in their progression, usually around the 15 to 20-year period, that salary almost doubles. My client will have nine years that will not be used. And, in effect, he's been penalized for when compared to an exact same person who has stayed in Pennsylvania and got all of his or her experience. Isn't it true that the pay scale classification is based on experience, not residency? Well, Your Honor, that's right. It's not a facial. It doesn't say if you lived in Pennsylvania. And if that was the situation, I agree, Your Honor. All right, so an Ohio resident who lives in Steubenville, Ohio, who's been teaching in the Moon Area School District for 10 years, when he wants to transfer to the Steel Valley School District, he gets full credit for the 10 years of Pennsylvania teaching, correct? Yeah, Your Honor, and that's correct. But what the Supreme Court has said in the Camden case was that the fact that it doesn't affect all people, all travelers, doesn't mean it doesn't burden people. Conversely, the woman that lives in Moon Township that's taught in Steubenville, Ohio, for 10 years, who goes to Steel Valley to teach, she gets no credit or just the limited credit, even though she's a Pennsylvania resident. So in my hypothetical, the Ohio resident is being treated by Steel Valley School District more favorably than the Pennsylvania resident, correct? Well, but, Your Honor, the question is not residency. The question is how they exercise their right to interstate migration. The person that lives in Moon Township and goes to teach in Steubenville and doesn't get the credit is not getting the credit. That burdens her right to do that, Your Honor, and that's what the Supreme Court looks at, Your Honor. It is the situation is simply this. Are we treating states differently? Are we treating experience differently based on the exercise of that right to migration? The person that lives in Moon Township and teaches in Steubenville travels every day for, I don't know, however many miles it is out of state, and her experience is discounted in that situation for no reason other than the fact that it was out of state, and that's what the complaint here pleads. So then a Pennsylvania resident would have a cause of action against Steel Valley for burdening the Pennsylvania resident's right to travel, which is really quite counterintuitive because if she just stayed home and taught in Moon rather than traveling, I mean, she's, isn't that the inverse of what the privileges and immunities clause protects? In fact, Justice, I think it was Justice Rehnquist discussed that in the Camden case, and what I believe was Justice Rehnquist said was that that person wouldn't have standing in that situation because there wouldn't be interstate migration, but that that doesn't affect the fact that a person from, coming from out of state, that is migrating to Pennsylvania, is also burdened by it. The issue is not residents as much, Your Honor. It's does this policy on its face or as applied burden the exercise of that right? And in the Camden case, I believe, Your Honor, it was an interstate situation. I think the city of Camden required so many percentage of all contracts to be in city, and that very argument was raised, Your Honor, that, well, this just doesn't, this is going to burden in-state people also, and what the court said was that, well, the fact that it does doesn't excuse the fact that it burdens this plaintiff or these plaintiffs who are doing it. The issue is simply a burden, Your Honor, and the district court really didn't distinguish, it's another judge of its own court, not that this court's bound by that, but when it said that the practical effect of the policy is to impose a substantial burden on your state migration, and that Ayersman case, which was decided in 2001, sort of anticipated what the Supreme Court would then do in the Hillside case, which is said let's look at the practical effect of the classification. The district court here dismissed on a 12B6, so we didn't have an opportunity to do that, but, Your Honor, it's our position that because that policy substantially, as the district court, another judge in the district court said, substantially burdens interstate migration, it's subject to strict scrutiny, and the district needs to come forward with a reason that's compelling to treat teaching, reading in Maryland different than teaching, reading in Pennsylvania. Is the issue here the same, the ability, this right to travel claim, is it analyzed the same whether it's public or private employment? I think, Your Honor, in private employment, I think it would probably be a commerce clause argument if indeed it would raise, and I think in our case, in any event, Your Honor, we're alleging the claim under the 14th Amendment, so that would clearly be public, and I believe there's a stronger argument for public, although the Supreme Court has said, for example, a policy that taxed back in 1919, the Supreme Court said a policy that places a tax on people who have an out-of-state office but live in Pennsylvania, for example, but have an office in Ohio, and those people are paid higher taxes, is a violation of the Privileges and Immunities Clause of Article 4, so it wasn't a 14th Amendment issue. I think we'll all agree that the Supreme Court's jurisprudence on this clearly before Sanias was kind of all over the place, but with Sanias, I think Justice Stevens made it fairly clear that if it has the tendency to penalize interstate migration, then that's subject to a heightened scrutiny, whether that be strict scrutiny or, as the plurality, or I'm sorry, the concurrence in the Sotomayor-Lopez case said, even rational basis, and, Your Honor, this case doesn't even survive rational basis. There are decisions, there are three decisions that say this kind of situation. The Hammonds case out of Illinois, again, not binding on this Court, but a look, dealt with a superintendent who wasn't offered a position because he didn't work in-state for two of the last three years, and the Court said that doesn't even survive rational basis review. Here, we didn't get a chance to even go toward that because the District Court made a rational basis guess and didn't really either look at whether it's rationally related or give us the opportunity to amend to allege basically what the Ayersman facts are, and in the Ayersman facts, it turns out that Maryland's testing, or I'm sorry, Pennsylvania's testing derives from Maryland's testing, so there's even less of a rational basis for that. Your Honor, again, the issue is simply does this have an impact, does this substantially burden, and a 12B6 motion is not the time for a District Court to be saying as a matter of law, this does not substantially burden if it implicates the right to travel. If there are no further questions, Your Honor, I'll. We'll hear you on rebuttal. Thank you. Thank you, Your Honor. Mr. Sanchez. May it please the Court. Good morning. My name is Tony Sanchez, and I represent the Steel Valley School District. I think that there is a mixing, to use a cliché here, of apples and oranges. As we know, there are three aspects to the right to travel, the right of a citizen to enter and leave one state, which is taken very, very literally by courts, and we don't see that a lot, the right to be a welcome visitor rather than an unfriendly alien when temporarily present in a state. That's not this case either, but what the parties have agreed and what the Court found is this is the type of case for travelers who become permanent residents to be treated like other citizens of that state. That's the Privileged Immunity Clause analysis, and that is the same as the Equal Protection Clause analysis, which looks for similarly situated persons, similarly situated in all aspects. What Appellant tries to do is bypass that and immediately go to the Penalty Clause, to the penalty-type cases, and he cites the Signs case, and he cites the New York Supreme, pardon me, not New York Supreme Court case, but the case of the Attorney General of New York versus Soto Lopez, and those cases are different. In those cases, the Supreme Court was addressing statutes that per se were discriminatory in the sense that those statutes made a distinction based on residency. For instance, the Signs case, there was a statute, a law in California, that if you came from another state, that you would not, for the first year, you would not receive the same welfare benefits as a longer-term resident of California. The statute itself was dealing with that. We don't have that here. What we have here at best is we have a rule, basically a school policy, that says we are not going to give the same credit for out-of-state school experience, and as the court pointed out, taking most of my argument away, is that the proper comparator, as Judge Lancaster properly found, was an out-of-state, was an in-state, somebody you could live for, as Judge Hardman pointed out, you could live for 30 years in Youngstown and taught 10 years or five years, whatever it would be, across the border in Grove City. You would then get credit, even though you were a non-resident, and the same could be true. I could be living in Uniontown and be a Pennsylvania resident forever, and I'm teaching in West Virginia. I cannot get credit for that West Virginia teaching experience. It's very, very simple. There is a burden here, though, right? I mean, a teacher in Illinois who wants to relocate to Pennsylvania would be perhaps disinclined to do so if she knew that the 20 years she's been teaching in Illinois weren't worth a hill of beans for purposes of pay in Pennsylvania, right? That's true. It is sort of protectionism, isn't it, to keep people within the state and keep matriculating through one state system rather than traveling about the country? Our courts, though, have been consistent in finding that incidental burdens like that do not give rise to a constitutional claim. What's incidental about a burden that after a few years you're making $22,000 less than somebody who has the exact same experience other than in a different state? This court filed the same thing in the Schumacher case, which was the bar exam case, where an attorney from California who was practicing in California came to practice in I believe it was Pittsburgh area, wanted to sit for the Pennsylvania bar. And he was not permitted to because he hadn't graduated from an accredited law school. He brought the same claim. In analyzing it, this court said, no, there's no different treatment. Remember, we have to go back. It's that first prong. The right to be treated like other citizens of that state. Or if you want to look at equal protection, similarly situated in all aspects. In the Schumacher case, the Third Circuit said, this court said, he's not being treated any differently because Pennsylvania bars anyone who graduated from an unaccredited law school to sit for the bar. Did Connolly get some credit for some of the nine years? I'm sorry, Your Honor. Did Connolly get any credit for any of the nine years? I believe it's alleged, and I'd have to look at the complaint. I believe that he was put on the first step, Your Honor. But anyway, this is to go back to your point, Your Honor, is that if that were the analysis, Schumacher would clearly be decided wrongly. This is a person who moved to Pittsburgh that's not going to be able to practice in state court. There's going to be an economic impact on him. So we believe that that is the applicable. And, you know, there was another case as well where this happened. You know, there was the Michael C. versus Radnor Township School District. In that case, a student from Washington, D.C., had an IEP under the IDEA for his education in Washington, D.C., and per that IEP, the school district provided him with private school education. He moves to the Radnor School District, meets with the district, the district convenes an IEP team, and they say, we believe we can provide this young man's services in our school with certain variances. The student and his father disagree, file this lawsuit. The father moves to New Jersey, but it's really of no impact. And in that case, this court found that he was not entitled to the same, because Pennsylvania's procedures, Pennsylvania's laws relating to special education were different, and that a Pennsylvania student would also have an IEP team reconvened. I think that's interesting as well, because, of course, Appellant argues that the lower court was wrong in finding the rational basis here for the law, but yet this court in the Third Circuit has said in the Michael C. versus Radnor case, there's a difference in education between states. As solicitors, as school district solicitors, for instance, we often provide each year a different type of seminar. For instance, this year, over this past year, in light of Penn State, in light of these horrific problems we're seeing, the child protective services law has been beefed up and changed, and school districts have trained on that. They've gone and trained. Every year they go for different training like this, and that is not something that a Maryland teacher is going to have or an Ohio teacher. There's going to be difference in the state testing. There's all these differences, so clearly a school district has a rational basis for that. Should we even get there? Should we even get to the rational basis test? I don't believe that we even get to a test in this analysis. You're saying it doesn't impact the constitutional right to trial. Right. I don't think we even get there. All right, but how could we square that with Erisman? Is it true that we would have to conclude that Erisman was wrongly decided in order to rule in your favor? Erisman, we have no evidence in Erisman, unfortunately, that the Schumacher-type argument was even raised. There's nothing in the opinion on that. There's nothing there. The facts are strikingly similar. The facts are strikingly similar. I agree, Your Honor, but the argument isn't there, and Schumacher is as clear as it can be, as is the Michael C. versus Radner case. They're both very clear. There's a difference between when you have a statute that, in its very language, distinguishes between a resident that's been a resident for a long time versus a short-term resident. As I said, like in the signs case, there is a difference, and we see that difference in the analysis. I don't think that in this case the appellant has even presented a colorable, a prima facie case for a right to travel, in the sense that, again, we're looking at the third type for those travelers who become permanent residents, the right to be treated like other citizens, because to do that, he has to allege comparators that were treated differently. That's not his complaint. And so we even try to amend the complaint, as Judge Lancaster correctly notes, because his allegations are as they are. His allegations say that what is discriminatory is this policy the school district has, but the policy is going to be the same if we get back to court. The policy is still going to be the same. It's going to say we don't give the credit for out-of-state teaching. It's going to be exactly the same, and you're still going to have, as Judge Hardiman pointed out, the scenarios where, you know, is the school district treating residents different from non-residents or short-term residents from long-term residents. You're still going to have the same questions, the person who lives in Youngstown that teaches in Pennsylvania, the person in Pennsylvania that teaches in Youngstown. That is going to be an incidental burden like this does not give rise to a constitutional deprivation, at least under the right to travel. The right to travel is pretty thin. We don't see it often. It's a pretty thin sliver of law. That's why if you go back and you look at the Supreme Court cases, the right to travel is found to emanate from all these different places in the Constitution. But what we're talking about is privileges of immunity, and the law is very clear on that, that it's identical to the analysis in equal protection. And what is our focus? Our focus is to be treated like other citizens of that state, to be treated or demonstrate for equal protection that you were treated differently from similarly situated individuals. We also cite in our brief a case from the Seventh Circuit, where the Seventh Circuit was dealing with a right to travel case, and when they found that there wasn't a proper comparator, they didn't even apply a rational basis test. And that's what we think. We think Judge Lancaster went beyond where he needed to go. I think once he found that the proper comparator was the individual that Judge Hardiman suggests, that since he couldn't and didn't allege that, that the Seventh Circuit says, since we don't have a comparator, since we don't have a prima facie claim made here, we don't even need to apply anything. I mean, that makes sense, because otherwise, under this scenario, anytime someone said anything impacted the right to travel, you'd have to then decide whether the rational basis test applies or whether it's subject to scrutiny. And that doesn't make sense, because the first step is for the court to see if a viable claim has been stated. And, again, I don't think discovery would make any difference with this, and I think Judge Lancaster is absolutely on point with this, when Judge Lancaster says amending would be futile, because the basis for this claim is this rule. The rules in the cases that Mr. Cordez so eloquently discusses in his brief and here, those cases all deal with statutes that say something about residency, that make a distinction based on residency, on their faces. Our rule is far from that. Our rule is far from that. It doesn't say anything explicitly about residency, but it at least tangentially impacts residency, doesn't it? Yeah, it could impact residency, but I don't think impacting, first of all, impacting residency doesn't get you into the situation that you have in signs or the Soto case. That's the crux of your argument, as I understand it. Yeah. There's a distinction for constitutional purposes between those that directly address residency and those that may, down the line, have some influence or impact on residency. Right. Is that really? That really is. It's a bifurcation. Yeah. Binary analysis for this court. And so I don't think Schumacher's overruled, and I found no one to say anything such as that, and that analysis is still being applied, and we cite a case from another jurisdiction very similar that went up to the Supreme Court and cert was denied. That's cited in our brief as well. But we think that distinction still exists. We understand your argument. Thank you, Mr. Sanchez. Thank you, judges. Mr. Cordez, would you begin your rebuttal by addressing what I just ended with Mr. Sanchez? Is this a binary analysis? I don't know that it's a binary analysis. I think what Mr. Sanchez and the district court are arguing is because it's not a facial, it doesn't facially say Maryland residents will receive no credit, therefore the constitutional analysis stops. And that's not the case. I mean, in the Hillside Dairy case, the Supreme Court was presented with that exact sole issue, whether it was specifically in the statute that it referred to out-of-state residents. It didn't. The Supreme Court reversed the Ninth Circuit when it said it didn't. Although this would be dicta, this test that it created, it said, we look at whether the classifications are proxies or whether the practical effect of the classification becomes discriminatory. The district court and Mr. Sanchez now have created this test that comparators are only people that are residents versus non-residents. And, Your Honor, I think the proper comparison in this case are teachers who have exercised their right to travel interstate versus ones who have not. And in that situation, Your Honor, the same result occurs. If I live in Steubenville, or I'm sorry, if I live in Moon and I teach in Steubenville, what have I done? I have exercised my right to migrate, temporarily or not. I don't know. That's a tough one. I mean, there's social welfare cases, right, where recent arrivals can't be deprived of social welfare benefits, right? Oh, sure, Your Honor. So when someone moves from Maryland to Pennsylvania, they need to receive the benefits, right? That's correct. Well, the person that stays in Maryland then should get the Pennsylvania welfare benefits as well, right? Well, no, Your Honor. Because you want us to compare those that have exercised their right to travel with those who have not exercised their right to travel. The people that ‑‑ it's a different situation, Your Honor, because the people who move to Pennsylvania will not ‑‑ I'm sorry, the people that work in Pennsylvania would not be applying for welfare benefits, excuse me, if they lived in Maryland. In Pennsylvania, they'd be applying for benefits in Maryland. No, well, I'd like to get the Pennsylvania benefits too, just like my cousin who migrated to Pennsylvania. And similarly, a teacher, you know, you're saying this teacher isn't going to leave Maryland to come teach in Pennsylvania. Isn't that the gravamen of your argument? Right, the gravamen is that this burdens that migration. Well, but the teacher did come to Pennsylvania, and the teacher arrived in Pennsylvania to teach, and the teacher in Pennsylvania was treated just like the other millions of Pennsylvania residents who had no teaching experience in Pennsylvania. Except, Your Honor, no, both were burdened, both's right to travel are burdened, because I have ‑‑ wherever I get my experience, the sole factor that's being decided here is whether it's in Pennsylvania or not. It is protectionist, as the court noted. And that's the issue. It's not residence. Although a lot of the Supreme Court cases end up being residency cases, Sanya's never limits its holding to those residents. In fact, it goes broader. It says that a classification that serves to penalize the decision to migrate is itself a penalty. And that's the sole issue, Your Honor. Does this tend to burden or burden the exercise of that right? It's as simple as that. Whether the residencies, these cases were not limited to residency. My time is up. There's no other questions. Thank you, Your Honor. Thank you, Mr. Cordes. Thank you, Mr. Sanchez. This case was very well presented, and we will take the matter under advisement.